# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

FILED SEP 27 2010
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____ Deputy Clerk

| | | |
|---|---|---|
| WILLIAM J. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV 09-264-RAW-SPS |
| | ) | |
| CORRECTIONAL OFFICER SCROGGINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment that alleges plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e. The court has before it for consideration plaintiff's complaint, the defendants' motion, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has not filed a response to the motion.

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Mack Alford Correctional Center (MACC) in Stringtown, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983. He is seeking relief for alleged constitutional violations arising from misconducts he received at MACC. The defendants are Correctional Officer Scroggins; Cecil Gibbons, MACC Food Service Supervisor; Justin Jones, DOC Director; Bobby Boone, DOC Deputy Director; Rob Anderson, DOC General Counsel; Dennis Cotner, DOC Medical Services Director; Walter Dinwiddie, MACC Warden; Anita Trammel, MACC Deputy Warden; Pat Sorrels, MACC Medical Services

Director; Dr. Cooper, MACC Staff Physician; Chris Triplett, MACC Nurse; Mrs. Vistoski, MACC Food Service Director; Mary Lou Rush, MACC Unit Manager; Reggie Green, MACC Case Manager; Melesa Nelson, MACC Case Manager; Captain Morgan, MACC Chief of Security; Lt. Roberts, MACC Security Shift Supervisor; Sgt. Shields, MACC Correctional Security Officer; Shawn Hedgecock, MACC Warden's Designee; and Debbie Morton, DOC Administrative Review Officer.[1]

Plaintiff's complaint is rambling and repetitive, but he has set forth three claims of alleged constitutional violations. He alleges that on June 8, 2009, he and other inmates were preparing the breakfast meal trays for inmates in the segregated housing unit, when an inmate read aloud an obscene comment that was written on a meal tray. In an alleged attempt to "introduce some levity," plaintiff responded with a remark about incest. Defendant Officer Scroggins became visibly upset and threatened to lock plaintiff in the shower, if plaintiff continued that type of dialogue. Plaintiff explained to Scroggins that he was making a joke, but Scroggins was not amused. Plaintiff complains he was issued two misconducts in retaliation for his comment about incest.

Plaintiff asserts in Count I of his complaint that his First Amendment right of free speech was violated, when Officer Scroggins issued two "bogus" offense reports in retaliation for the incest remark. Plaintiff also argues that the misconduct procedure should

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

2

not be used to effect personal vendettas. He asserts that on June 8, 2009, at about 6:30 a.m., he and Inmate Washington were engaged in conversation while sitting on the handrail in front of the north dining hall serving line. Officer Scroggins claimed he told plaintiff three times to get off the handrail and start the serving line. Plaintiff claims Scroggins said it only once, and plaintiff promptly got off the handrail and proceeded to his work station about six feet away. Plaintiff hesitated when he saw there were no inmates inside the north dining hall, and Officer Scroggins approached and said, "You'll do what I tell you, when I tell you to!" Scroggins then allegedly grabbed plaintiff's left wrist with his left hand and cradled handcuffs on plaintiff's left wrist, while telling plaintiff to "cuff up! cuff up! cuff up!" Plaintiff told Scroggins he would not cuff himself, so Scroggins handcuffed him and escorted him to the showers of the segregated housing unit.

Plaintiff claims in Count II that his rights under the Americans with Disabilities Act were violated. He claims to suffer from tinnitus, a worn hip joint, a worn rotator cuff, several back injuries, bad knees, and a bad ankle. Plaintiff admits that Officer Scroggins would not have been aware of the alleged disabilities. Plaintiff maintains he is a server on the morning shift, and he always is at work in time to prepare meal trays to be served to the inmates. He sits on the handrail between meal runs so he can observe the entire serving line, as well as the north entrance door to the north dining hall.

On June 10, 2009 at 2:00 p.m., plaintiff gave Defendant Melesa Nelson a list of ten persons to be called as witnesses in the misconduct proceedings. Ms. Nelson was the disciplinary investigator, but she refused to contact and solicit statements from two relevant witnesses, Inmate Washington and Inmate Leslie. Plaintiff asserts Ms. Nelson's inaction deprived him of his right to call witnesses in his own defense.

In Count III plaintiff claims his civil rights, as guaranteed by the American Civil Liberties Act, were violated, when he was harassed on June 8, 2209, after Defendant Lt. Roberts radioed to have the inmates released from a unit. Officer Scroggins allegedly began "ranting," "Line servers out! Line servers out! Line servers out!" when all the line servers already were in close proximity to their work stations.

While plaintiff was locked up in the shower, Lt. Roberts ushered him into the office for a brief interview. Roberts advised plaintiff that Scroggins intended to write up and lock up plaintiff, because he did not like plaintiff's attitude. Plaintiff then told Defendant Melesa Nelson that MACC staff could not just lock up inmates because of their attitudes, but Ms. Nelson informed plaintiff that it was done all the time. Plaintiff complains there is an orchestrated campaign of bullying, threats, and intimidation at MACC, as evidenced by not allowing the inmates enough time to consume their meals.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th

4

Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

**Count I: Misconducts**

According to DOC Policy OP-060125(V), "Department Offender Disciplinary Procedures," to initiate the grievance policy related to misconducts, an inmate must appeal the decision within 30 calendar days to the facility head/district supervisor. If unsuccessful, the inmate then may appeal the decision of the facility head/district supervisor within 30 calendar days to the director. The administrative process been completed only after all these steps have been taken.

The special report shows that on June 8, 2009, Officer Scroggins issued plaintiff two misconducts for Disrespect to Staff (09-104A) and Disobedience to Orders (09-105A), when plaintiff refused to get off the hand rails and go to the serving line, and he refused to cuff up when directed, saying "he was not going to put those fucking cuff[s] on." Later that morning Officers Floyd Jackson and Ronald Brawdy inventoried plaintiff's property and found four pill bottles with no identifying labels. The bottles contained pills that had been removed from the original pill cards prescribed by medical. Plaintiff was issued a misconduct for Possession of Contraband (09-106A).

On June 22, 2009, plaintiff was found guilty of Disrespect to Staff (09-104A), Disobedience to Orders (09-105A), and Possession of Contraband (09-106A). He filed appeals at MACC for the three misconducts on June 25, 2009. On June 26, 2009, rehearings were ordered for the Disrespect to Staff and Disobedience to Orders misconducts, because the Investigator's Report did not document the witnesses called. On that same date a rehearing was ordered for the Possession of Contraband misconduct, because a review of the evidence was not completed. On July 8, 2009, plaintiff again was found guilty of the three

5

misconducts, and the facility head affirmed on July 9, 2009. He did not appeal the rehearings at MACC, but filed appeals with the Administrative Review Authority on August 11, 2009. On that same date, the misconduct for Disobedience to Orders was reversed and expunged, because plaintiff had received two misconducts for the same incident. Plaintiff's appeals for the three misconducts were returned unanswered on August 18, 2009, as untimely. The notice from the Director's Designee stated that plaintiff had forfeited the opportunity to continue the appeal process, but the denial also referenced OP-060125(VI), which sets forth the procedure for submitting a disciplinary appeal out of time. The court finds plaintiff failed to exhaust his administrative remedies for his misconduct convictions.

**Counts II and II: Americans with Disabilities Claim, Misconduct Witnesses, and Harassment**

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff. If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

The special report indicates plaintiff submitted a Request to Staff to Case Manager Melesa Nelson on June 18, 2009, requesting statements from Inmate Washington and Inmate Leslie regarding the misconducts. Ms Nelson's response, dated June 23, 2009, stated that plaintiff had not requested Inmates Washington or Leslie as witnesses, and plaintiff had received witness statements for each witness he requested during the misconduct investigation. There is no indication that plaintiff made any additional attempts to exhaust

his administrative remedies for Counts II or III. He stated in his complaint that he spoke to his work supervisor about Officer Scroggins' alleged actions in the cafeteria, and he intended to file an "administrative separatee" against Scroggins "at the earliest possible opportunity." There is nothing in the record, however, indicating he completed the administrative remedies process for the allegations in Count II and Count III.

**ACCORDINGLY,** the defendants' motion to dismiss [Docket #53] is GRANTED, and this action is, in all respects, DISMISSED for plaintiff's failure to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e.

**IT IS SO ORDERED** this 27th day of September 2010.

*Ronald A. White*
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**